UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BLACK & WHITE INVESTMENTS, LLC, BWI DEVELOPMENT & MANAGEMENT, INC., AND BUILDING & IMPACTING COMMUNITIES, INC., <br><br>    Plaintiffs <br><br> v. <br><br> CITY OF FORT WAYNE and LAWRENCE SHINE <br>    Defendants <br>_____ <br> CITY OF FORT WAYNE <br><br>    Counterclaimant <br><br> v. <br><br> BLACK & WHITE INVESTMENTS, LLC, BWI DEVELOPMENT & MANAGEMENT, INC., AND BUILDING & IMPACTING COMMUNITIES, INC., <br><br>    Counterclaim Defendants <br>_____ | ) ) ) ) ) ) ) ) ) )   CASE NUMBER:  1:21-CV-459 ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**OPINION AND ORDER[1]**

The Plaintiff entities (collectively, Development Parties)[2] contracted with the City of Fort Wayne (the City) to receive 8.2 acres of land (the Land) in Fort Wayne for the Development Parties

---

[1] The caption used by the parties in their filings is incorrect. The error is harmless in that the docket and the body of their filings identifies the parties correctly. The Court has corrected the caption to properly reflect the parties and their respective status' in the litigation. The parties are instructed to be more cautious in future filings and to use the revised caption.

[2] When necessary to refer to Plaintiffs individually, the Court refers to the Plaintiffs as "BWI", "BWI-DAM" and "BIC".

to use in a multi-phase development project known as Posterity Heights (the Agreement). After the City terminated the Agreement, the Development Parties sued asserting race discrimination by Defendant Lawrence Shrine (Shine) (Count 3) and state law breach of contract and promissory estoppel claims (Counts 1 and 2) against the City. The City moved for judgment on the pleadings on the breach of contract claim. (ECF No. 67). The motion is fully briefed (ECF Nos. 68, 72, 74) and ripe for consideration. Because the Court finds that regardless of which side's argument prevails, the breach of contract claim fails as pled, the City's motion will be GRANTED. Plaintiffs will be granted leave to file an amended complaint to pursue any non-contractual remedies they believe may exist.

## DISCUSSION

1. **Legal Standard**

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).

"Although in evaluating a motion for judgment on the pleadings under Rule 12(c) '[a] district court may not look beyond the pleadings,' the court 'may take into consideration documents incorporated by reference to the pleadings' and 'may also take judicial notice of matters of public record.'" *Boeckman v. A.G. Edwards, Inc.*, 461 F.Supp.2d 801 (S.D. Ill. 2006) (citation omitted). A court may "take judicial notice of 'proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to the matters at issue.' This

is true even though those proceedings were not made part of the record before the district court." *United States v. Hope*, 906 F.2d 254, 260 n. 1 (7th Cir. 1990) (citations omitted).

The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same. "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

**2. Factual Background**

After acquiring the Land in 2010, the City issued a request for proposal to develop the Land in 2016. (Third Am. Compl., ECF No. 62, ¶¶ 1- 2). The Development Parties, apparently through Gary Hobbs (Hobbs), a black developer and owner of BWI and BWI-DAM, responded to the request for proposal. In August 2016, the City agreed to donate the Land to the Development Parties to be used by them in a development project named Posterity Heights (the Project). (Third Am. Compl., ¶ 5; The Agreement, ECF No. 62-1). Hobbs signed the Agreement as the Executive Director of BIC, an Indiana non-profit organization.[3] Under the Agreement, the parties contemplated a multi-phase development project with closing occurring by year's end 2016. (*Id.* ¶ 5). The donation of the Land was subject to a contingency provision set forth in ¶ 9 of the

---

[3] The Complaint does not provide any information about the relationship between BIC to the other companies Hobbs owns. But as noted in the body of this opinion the Agreement is signed by Hobbs in his capacity as the Executive Director of BIC.

Agreement and a use restriction set forth in ¶ 8.2. The Agreement also contained remedy provisions in the event of breach by either party:

> **10. <u>Remedies</u>**
>
> 10.1   If Donor should fail to perform in accordance with this agreement, or otherwise breach any of the terms, covenant, agreements, representations or warranties contained in this agreement, then Donee's exclusive remedy shall be to terminate this agreement and upon such termination, the parties hereto shall be released from any and all obligations arising hereunder.
>
> 10.2   If Donee should fail to perform in accordance with this Agreement, or otherwise breach any of the terms, covenants or agreements contained in this Agreement, then Donor may terminate this Agreement and upon such termination, the parties hereto shall be released from any and all obligations arising hereunder.

(Agreement, ¶ 10). Paragraph 10.1 restricts the Development Parties' remedy to termination of the Agreement. Yet, the City did not have the same restriction; the language is permissive, providing that the City "may" terminate the Agreement in the event of breach. It does not exclude other remedies or provide that termination is the City's "exclusive" remedy if the Agreement is breached.

The Complaint is silent about what, if anything, happened between the end of 2016 when the deal was contractually required to close and June 2017 when the parties executed an amendment to the Agreement (the Amendment). (Third Am. Compl., ¶ 12; Amendment, ECF No. 62-2).[4] It appears that the parties did not meet the December 2016 closing date since the Amendment's purpose was to permit the Development Parties to close on Phase I separately from

---

[4] The Amendment's preamble refers to a donation agreement effective July 31, 2016, and refers to that agreement as Exhibit A attached to the Amendment. Exhibit A to the Amendment is not included in the record so the Court cannot discern whether the reference to a July 31 agreement is a typographical error or there is a different agreement between the parties. Both the Agreement the Court has been provided and the Complaint reference an August 28, 2016, agreement.

the other phases and established a new closing date for that purpose. (*Id.* ¶ 12).[5] The Complaint goes on to provide details, none of which are relevant to the current dispute, of the various efforts undertaken by the Development Parties to meet with individuals, secure tax credits, and obtain approval and support for the Project.

As time went on, the Development Parties met with representatives of the City to discuss the progression of the Project. (Third Am. Compl. ¶¶ 22-23). During these meetings, the City represented that despite the passage of the closing date in the Agreement, the City did not plan to pull the Land from the Development Parties. These assurances allegedly continued into September and October 2019 when the Development Parties met with the Fort Wayne Housing Authority. (*Id.* ¶ 25). At no time were the Development Parties advised that their failure to meet the closing date was an issue. (*Id.* ¶¶ 22–25). The Development Parties, in turn, relied on the assertions that the Land would be conveyed and incurred substantial designing and engineering expenses for phases II and III of the Project. (*Id.* ¶ 24).

On January 17, 2020, Defendant Shine, operating as the City's Attorney, issued a letter terminating the donation agreement for the Development Parties' failure to timely close on Phases II and III of the Project by the original closing date in 2016.[6] Based on these events, the Development Parties filed suit against the City for breach of the Agreement and promissory estoppel.

3. **Analysis**

The City argues that the Development Parties' breach of contract claim fails as a matter of law because of the exclusive remedy provision in ¶ 10 of the Agreement. As their argument goes,

---

[5] Whether Phase I of the project ever closed is not clear from the Complaint.

[6] The Complaint details statements Shine allegedly made that provide support for the racial discrimination claim against him. Those are not relevant here.

the exclusive remedy for the Development Parties in the event of the City's breach is termination of the Agreement. Since the City has already terminated the Agreement for what it determined was the Development Parties' breach, it argues that even if the Development Parties prevailed on their breach of contract action, they are not entitled to any additional contractual damages. For their part, the Development Parties approach things from a different angle. They argue that enforcing the remedies provision renders the Agreement illusory because it fails to impose mutual obligations on the parties. They assert that the City assumed no defined obligation under the Agreement and is free to just terminate it under the remedy provision and walk away without recourse. After a review of the briefs and governing law, the Court cannot agree with the Development Parties' position.

Starting with a brief primer on contract law, a valid contract requires an offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the transaction." *Paul Terrault & Gary Cmty. Sch. Corp. v. Scheere*, 200 N.E.3d 490, 495 (Ind. Ct. App. 2022) (citing *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016), *trans. denied*). Yet even when all the above elements are seemingly met, a contract may only be formed where a mutuality of obligation exists. Indeed, "a fundamental concept of contract law is that a contract is unenforceable if it lacks mutuality of obligation—i.e., if it fails to obligate the parties to do anything." *Security Bank & Trust Co. v. Bogard,* 494 N.E.2d 965, 968 (Ind. Ct. App. 1986). "[M]utuality is absent when only one of the contracting parties is bound to perform, and the other party remains entirely free to choose whether or not to perform, and the rights of the parties exist at the option of one only." *Id.* (citing 17 C.J.S. Contracts § 100(1) (1963)).

A lack of mutuality, also known as an illusory contract, then, implicates contract formation. *See* BLACK'S LAW DICTIONARY 748 (6th ed.1990) (an illusory contract is "[a]n expression

cloaked in promissory terms, but which, upon closer examination, reveals that the promisor has not committed himself in any manner."). Thus, "where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration. Even if it were recognized by law, it would impose no obligation, since the promisor always has it within his power to keep his promise and yet escape performance of anything detrimental to himself or beneficial to the promisee." 3 Williston on Contracts § 7:11 (4th ed.). Thus, a finding that a contract fails the mutuality of obligation requirement makes it illusory and no consideration exists to form a contract. Indeed, "where no consideration exists, and is required, the lack of consideration results in no contract being formed." *Id.*

What this basic contract law translates into for the Development Parties is a legal quagmire. For instance, they ask the Court to "deem the Remedies Provision to be unenforceable, and the remainder of the Agreement survives." (ECF No. 72 at 5) So they want the best of both worlds. They ask for a legal determination that the contract provision limiting their remedy is unenforceable but, at the same time, they argue that there was an enforceable obligation to donate the Land that the City breached. The Court fails to see how both can be true. They cannot argue that the contract lacks mutual obligation (i.e. consideration) and, at the same time, claim the existence of an enforceable obligation. A contract cannot be both invalid and enforceable. Indeed, a party asserting "an illusory contract cannot then turn around and *enforce* the illusory contract against the other party; [Plaintiff] cannot have [his] cake and eat it, too." *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 708 (10th Cir. 2012); 3 Williston on Contracts § 7:7 (4th ed.) (stating that an illusory promise cannot serve as consideration to support a contract). Thus, if the Court were to

adopt the Development Parties' position it would necessarily find that no contract was formed. And, if that is the case, their breach of contract claim cannot be sustained.[7]

The same conclusion results if the Court adopts the City's position. The City asserts that the parties entered into an arm's length transaction that specifically agreed to the particular remedies provisions in ¶10. It notes that Indiana has long recognized the freedom of parties to enter into contracts, *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 521 (Ind. 2021) (citing *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995), and presumes that the contracts "represent the freely bargained agreement of parties." *Id*. Thus, in its view, the Agreement is valid under Indiana law "so long as [it isn't] illegal or against public policy." *Id*. (citing *Fresh Cut, Inc.*, 650 N.E.2d at 1130). The City goes on to point out that "there is no dispute that the Agreement is unenforceable or violates public policy." (ECF No. 68 fn. 2).

In response, the Development Parties make the alternative argument that *if* the remedies provisions are not illusory, they lack the definiteness to be enforced. This, too does not aid their cause. True, "[a] contract which excludes some remedy given by law should be so definite and positive in its terms as to show the clear intention of the parties to do so." *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC,* 870 N.E.2d 494, 502–03 (Ind. Ct. App. 2007); *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distrib., Inc.,* 837 N.E.2d 1058, 1074 (Ind. Ct. App. 2005) (citing *Strauss v. Yeager,* 48 Ind. App. 448, 93 N.E. 877, 882 (1911)). It follows then, that when a contract provides a specific remedy, a party has not been deprived of "of any rights given by law, unless

---

[7] What the Development Parties could be indirectly arguing is that they agreed to a contract that they could not enforce by specific performance in the event of breach and thus, the absence of a true remedy for the City's alleged breach makes the contract illusory. But this is contrary to what they have plead here, which is that a contract existed, was breached by the City, causing them damages. In any event, the Court is not required to create arguments for the parties.

the terms thereof expressly restricted the parties to such specified remedy." *Simon Prop.,* 837 N.E.2d at 1074 (in the context of a lease agreement).

The City argues that the language in the remedies provisions in paragraph 10 is clear, unambiguous, and represents the intent of the parties. This Court is hard-pressed to hold otherwise. The language is definitive and positive, stating that if the City fails to perform in accordance with the Agreement, "[the Development Parties'] exclusive remedy shall be to terminate this Agreement." The Court must give the unambiguous language its clear meaning, and in this case, that meaning is that the Development Parties' remedy is "restricted" or "limited" to terminating the Agreement. https://www.merriam-webster.com/dictionary/exclusive. With this reading, and assuming there are no other reasons why the contract is unenforceable (such as illegality or public policy),[8] the Development Parties are restricted to termination of the Agreement as their sole remedy. Since that has occurred, albeit not in the fashion contemplated by the Development Parties, the City's Motion for Judgment on the Pleadings on Count 1, breach of contract, is GRANTED.

All this aside, the Development Parties might be able to plausibly assert non-contractual remedies. While the Court reaches no conclusion on whether such remedies exist under Indiana law, it will permit the Development Parties one final opportunity to amend to assert such claims if they believe they have them.

## **CONCLUSION**

---

[8] Whatever else the Development Parties wish to argue about the contract's validity, that the remedies provisions are void for lack of definiteness is not a winning argument. The Court has not been asked to decide, nor is the Court expressly resolving the issue of, whether the Agreement itself is valid and enforceable.

9

As discussed above, the City's Motion for Judgment on the Pleadings as to Count 1 is GRANTED. Count 1 is dismissed. Any amended complaint by the Development Parties consistent with this Opinion and Order shall be filed within 14 days.

SO ORDERED on September 27, 2023.

s/ <i>Holly A. Brady</i><br>
CHIEF JUDGE HOLLY A. BRADY<br>
UNITED STATES DISTRICT COURT