UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BLACK & WHITE INVESTMENTS, LLC, BWI DEVELOPMENT & MANAGEMENT, INC., AND BUILDING & IMPACTING COMMUNITIES, INC., <br><br> Plaintiffs <br><br> v. <br><br> CITY OF FORT WAYNE and LAWRENCE SHINE <br> Defendants <br> _____ <br> CITY OF FORT WAYNE <br><br> Counterclaimant <br><br> v. <br><br> BLACK & WHITE INVESTMENTS, LLC, BWI DEVELOPMENT & MANAGEMENT, INC., AND BUILDING & IMPACTING COMMUNITIES, INC., <br><br> Counterclaim Defendants <br> _____ | CASE NUMBER: 1:21-CV-459 |

## OPINION AND ORDER

The Plaintiff entities (collectively, "Development Parties") signed, what turned out for them to be, a bum contract with the City of Fort Wayne ("City") to develop 8.2 acres of land ("Land") in Fort Wayne. For the second time, they ask this Court to revive their claim for breach of contract and allow it to proceed through discovery. For the second time, the Court declines that request.

Before the Court is the City's second motion for judgment on the pleadings seeking dismissal of the Development Parties' breach of contract claim. (ECF No. 90). The motion is fully

briefed (ECF Nos. 91, 98, 99) and ripe for consideration. Because the Court finds that the Development Parties' Fourth Amended Complaint again fails to state a claim for breach of contract, the City's motion will be GRANTED.

## DISCUSSION

1. **Legal Standard**

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).

"Although in evaluating a motion for judgment on the pleadings under Rule 12(c) '[a] district court may not look beyond the pleadings,' the court 'may take into consideration documents incorporated by reference to the pleadings' and 'may also take judicial notice of matters of public record.'" *Boeckman v. A.G. Edwards, Inc.*, 461 F.Supp.2d 801 (S.D. Ill. 2006) (citation omitted). A court may "take judicial notice of 'proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to the matters at issue.' This is true even though those proceedings were not made part of the record before the district court." *United States v. Hope*, 906 F.2d 254, 260 n. 1 (7th Cir. 1990) (citations omitted).

The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same. "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). "Thus to succeed, the moving party

must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

2. **Procedural Background**

On September 27, 2003, the undersigned entered an Opinion and Order granting the City's motion for judgment on the pleadings and dismissing Count 1 (breach of contract) of the Third Amended Complaint. (ECF No. 78). In its order, the Court concluded substantively that the allegations in Count 1 failed to state a claim for breach of contract. However, the Court noted that the Development Parties "might be able to plausibly assert non-contractual remedies." (*Id.* at 9). For this reason, the Court permitted the Development Parties "one final opportunity to amend to assert such claims if they believe they have them." (*Id.*).

Thereafter, the Development Parties filed a Fourth Amended Complaint (ECF No. 84) ignoring the restriction that the amendment was permitted only as to the assertion of non-contractual remedies. Instead, the Fourth Amended Complaint repleads a breach of contract claim and restates its other claims, one for promissory estoppel against the City and another for discrimination against Defendant Shine. The City filed its answer (ECF No. 89) and shortly thereafter filed the present motion for judgment on the pleadings seeking again to dismiss Count I.

3. **Development Parties' Fourth Amended Complaint**

The basic allegations have changed little between the third and fourth amended complaints and their respective Answers. After acquiring the Land in 2010, the City issued a request for proposal to develop the Land in 2016. (Fourth Am. Compl., ECF No. 84, ¶¶ 1- 2). On August 28,

2016, the City agreed to donate the Land to the Development Parties to be used by them in a development project named Posterity Heights ("Project"). (*Id.* ¶¶5, 10; Agreement, ECF No. 84-1). Under the Agreement, the parties contemplated a multi-phase development project with closing occurring by year's end 2016. (Fourth Am. Compl. ¶5). Paragraph 10 of the Agreement contains remedy provisions in the event of breach by either party:

> **10. <u>Remedies</u>**
>
> 10.1   If Donor should fail to perform in accordance with this agreement, or otherwise breach any of the terms, covenant, agreements, representations or warranties contained in this agreement, then Donee's exclusive remedy shall be to terminate this agreement and upon such termination, the parties hereto shall be released from any and all obligations arising hereunder.
>
> 10.2   If Donee should fail to perform in accordance with this Agreement, or otherwise breach any of the terms, covenants or agreements contained in this Agreement, then Donor may terminate this Agreement and upon such termination, the parties hereto shall be released from any and all obligations arising hereunder.

(Agreement, ¶ 10). Paragraph 10.1 restricts the Development Parties' remedy to termination of the Agreement in the event of breach. Yet, the City did not have the same restriction; the language in ¶10.2 is permissive, providing that the City "may" terminate the Agreement in the event of breach. It does not exclude other remedies or provide that termination is the City's "exclusive" remedy if the Agreement is breached. Although the Agreement contains this restriction, the Development Parties "did not intend for Section 10.1 … to allow [the City] to terminate the contract unilaterally and without any recourse or remedy for Development Parties." (Fourth Am. Compl. ¶12).

The Agreement also contains a severability provision at ¶19.

4

> 19. **Severability**. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, but the extent of such invalidity or unenforceability does not destroy the basis of the bargain among the parties as expressed herein, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

(Agreement, ¶19). Following the execution of this Agreement, the Development Parties applied for low-income tax credits on multiple occasions. (Fourth Am. Compl. ¶¶15, 16).

The Complaint is silent about the happenings between the end of 2016 when the deal was contractually required to close, and June 29, 2017, when the parties executed an amendment to the Agreement ("Amendment"). (Fourth Am. Compl., ¶12; Amendment, ECF No. 84-2). The Amendment's purpose was to permit the Development Parties to close on Phase I separately from the other phases of the project and established a new closing date for that purpose. (*Id.* ¶ 17).[1] The Complaint goes on to provide details, none of which are relevant to the current dispute, of the various efforts undertaken by the Development Parties to meet with individuals, secure tax credits, and obtain approval and support for the Project.

On February 27, 2019, the Development Parties received a letter from the City informing them that conditional approval was awarded for Phase II of the project. (Fourth Am. Compl. ¶26). As time went on, the Development Parties met with representatives of the City to discuss the progression of the Project. (*Id.* ¶¶ 27, 28). During these meetings, the City represented that despite the passage of the closing date in the Agreement, the City did not plan to pull the Land from the Development Parties. These assurances allegedly continued into September and October 2019 when the Development Parties met with the Fort Wayne Housing Authority. (*Id.* ¶ 28, 30). At no

---

[1] Whether Phase I of the project ever closed is not clear from the Complaint.

5

time were the Development Parties advised that their failure to meet the original closing date was an issue. (*Id.* ¶¶ 22–25). The Development Parties, in turn, relied on the oral assertions and representations that the Land would be conveyed and incurred substantial designing and engineering expenses for phases II and III of the Project. (*Id.* ¶ 24).

On January 17, 2020, Defendant Shine, operating as the City's Attorney, issued a letter terminating the Agreement relying on the Development Parties' failure to timely close on Phases II and III of the Project by the original closing date in 2016.[2] (Fourth Am. Compl. ¶31). On November 20, 2020, the City issued a new request for proposal regarding the development of the previously donated land. (*Id.* ¶ 37). The Development Parties timely submitted a response to the request for proposal but were notified in March 2021 that they were not chosen to develop additional phases of the land. (*Id.* ¶¶38-39).

Based on these events, the Development Parties filed suit against the City for breach of the Agreement and promissory estoppel. They have also sued Defendant Shine asserting discrimination.

4. **Legal Analysis**

First things first. As set out above, the Fourth Amended Complaint filed by the Development Parties exceeds the scope of the authority to amend granted by this Court in its Opinion and Order, ECF No. 78. There, this Court examined the breach of contract claim and determined that the remedies provision in ¶10 of the Agreement barred the Development Parties from seeking contract damages for breach of contract. In part and parcel of that opinion, the Court rejected the Development Parties argument that the remedies provision the City sought to enforce was illusory and could be severed from the Agreement under the severability provision in ¶19. To

---

[2] The Complaint details statements Shine allegedly made that provide support for the racial discrimination claim against him. Those are not relevant here.

recap this Court's opinion, the Court rejected the Development Parties position that a contractual *provision* could be illusory; rather, the Court held that the argument that a contract contained illusory provisions is really an attack on contract formation. *See* Opinion and Order, at 7. This Court went on to note that a party asserting "an illusory contract cannot then turn around and *enforce* the illusory contract against the other party; [Plaintiff] cannot have [his] cake and eat it, too." *Id.* (quoting *McBride v. Peak Wellness Ctr. Inc.,* 688 F.3d 698, 708 (10th Cir. 2012)). The Court then continued on to the Development Parties' alternative argument that even if the remedies provision isn't illusory, the remedies provision lacked the definiteness required to be enforced:

> The City argues that the language in the remedies provisions in paragraph 10 is clear, unambiguous, and represents the intent of the parties. This Court is hard-pressed to hold otherwise. The language is definitive and positive, stating that if the City fails to perform in accordance with the Agreement, "[the Development Parties'] exclusive remedy shall be to terminate this Agreement." The Court must give the unambiguous language its clear meaning, and in this case, that meaning is that the Development Parties' remedy is "restricted" or "limited" to terminating the Agreement. https://www.merriam-webster.com/dictionary/exclusive.

(*Id.* at 9).

So, regardless of how the Court looked at the parties' arguments, it concluded that either: (1) no contract had been formed because the Agreement was illusory (the consequence being a breach of contract claim did not lie); or, (2) if a contract had been formed, the remedies provisions was sufficiently definite to preclude the Development Parties from recovering any damages other than termination of the Agreement (which had already occurred). Because the result of either option doomed the Development Parties' claim for breach of contract, the Court dismissed that count and granted leave for the Development Parties to amend their complaint to assert claims for non-contractual remedies if they believed they could do so. That is not what the Development Parties did.

7

The Fourth Amended Complaint repled the same breach of contract claim this Court previously dismissed as well as its other two claims, one for promissory estoppel and the other for discrimination under 42 U.S.C. §1983. Given that the Court did not grant leave to replead the breach of contract claim, this Court would be well within its discretion to simply strike that claim and allow the case to proceed on the remaining claims. *Tierney v. Quincy Sch. Dist. No. 172*, 125 F. App'x 711, 719 (7th Cir. 2005) (upholding district court's decision to strike claims in an amended complaint that exceeded the scope of the court's authorization). But rather than proceed in that fashion, the Court finds the better course of valor to clarify why it is the breach of contract claim must, once again, be dismissed and specify that the dismissal is without further leave to amend.

The preliminary problem for the Plaintiffs is that they have pled themselves out of Court. In the Fourth Amended Complaint, the Development Parties assert that a "valid and enforceable agreement existed" between the City and Development Parties. They attach the Agreement that, in turn, demonstrates remedies for the claim for breach of contract are foreclosed. (Fourth Am. Compl. ¶41; ECF No. 41-1). Since "[c]ompensable damages are an element of a breach of contract cause of action," *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007), the Complaint pled competing facts that establish a defense to the recovery of one element of the breach of contract claims. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citing *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006)). For this Court to find otherwise, "it would be necessary to contradict the complaint in order [for the plaintiff] to prevail on the merits.'" *Blagojevich*, 526 F.3d at 1086 (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)).

8

But even overlooking this pleading problem to address the substance of the Plaintiffs' contentions, the City repeats its argument that the Agreement's exclusive remedy provision precludes the Development Parties from contractual remedies other than termination of the Agreement – which has already occurred. The Development Parties' response, recognizing this Court's prior discussion and holding, is that enforcing the remedies provision, as the City proposes, renders *the Agreement* illusory. Agreed!  So then, no contract was formed and again, the Court is contradicting the Complaint's assertion that a valid and enforeceable agreement exists. This is precisely what the Court said in its prior order. *See* Opinion and Order at pp. 6-8. Indeed, if mutuality of assent was lacking, *see Security Bank & Trust Co. v. Bogard,* 494 N.E.2d 965, 968 (Ind. Ct. App. 1986) (holding that mutuality of assent is "absent when only one of the contracting parties is bound to perform, and the other party remains entirely free to choose whether or not to perform…"), so that no contract formed, there ipso facto can be no set of facts under which the Development Parties can recover under their breach of contract claim based on the Agreement.

Alternatively, the Development Parties argue that the remedies provision renders the Agreement unconscionable under Indiana law. In Indiana, an unconscionable contract is one that "no sensible man not under delusion, duress or in distress would make, and [that] no honest and fair man would accept." *Weaver v. Am. Oil Co.,* 257 Ind. 458 (1971). But again, even if the Court accepts the Development Parties' argument that the Agreement contained provisions (such as the remedies provision) that were "so oppressively one-sided and harsh" that they invalidate the Agreement under Indiana law, the outcome doesn't assist them here. If no contact was formed, the Development Parties cannot recover damages for breach of the Agreement. *Brumley v. Commonwealth Bus. Coll. Educ. Corp.,* 945 N.E.2d 770, 777 (Ind. Ct. App. 2011) ("A contract is

unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms.").

The Development Parties, however, aren't vying for the Court to find the entire agreement invalid as unconscionable. Remember, they pled the existence of a valid and enforceable contract. They seek to have the severability provision at ¶19 do the heavy lifting and save them from the enforcement of the remedies provision. They propose that the Court can find the remedies provision unconscionable and sever it under ¶19 without destroying the rest of the Agreement. But their battle on this front is made substantially more difficult, as the City observes, by the language in ¶22 of the Agreement which states, "[t]his Agreement has undergone drafts with the negotiated suggestions of all parties and therefore no presumption shall arise favoring any party by virtue of the authorship of this Agreement or any of its provisions. The parties hereto have been advised by their respective legal counsel regarding the form and substance of the provisions contained therein…" (Agreement, ¶22). Given this language, which substantially undermines the idea that the Development Parties were not privy to what the various contract provisions meant, or that they lacked the opportunity for meaningful review of the Agreement, the Court is hard-pressed to conclude that the Development Parties were somehow disadvantaged in the bargaining process. And, the Development Parties have not assisted the Court in this regard. They cite no legal authority to support the position that a provision is unconscionable *in the face of language in the Agreement* that represents the parties were on equal footing in the contract negotiations. So, even if the Court assumes it could use the severability provision to save the Agreement, it must first find that the remedies provision is unconscionable despite the express contractual language in ¶22, which this Court declines to do.

In sum, the Development Parties want the best of both worlds. They want the Court to find that the Agreement, which they signed after multiple drafts and review by legal counsel as to the "form and substance of the provisions contained therein" (Agreement, ¶22) is valid. At the same time, they want this Court to sever or reform the provisions of the Agreement that are unfavorable to them, namely the remedies provision. However, "[e]quity has jurisdiction to reform written documents in only two well-defined situations: (1) where there is mutual mistake, or (2) where there has been mistake by one party, accompanied by fraud or inequitable conduct by remaining party." *Peterson v. First State Bank,* 737 N.E.2d 1226, 1229 (Ind.App.2000).[3] The Development Parties have not pled facts, even after taking liberties with this Court's prior authorization to amend, that would entitle them to that type of relief.

That leaves the Court with the same quagmire it faced in the first go-round. Plaintiffs have either pled themselves out of court or failed to state a cognizable claim for breach of contract. Either way, their breach of contract claim fails to pass muster. The contract contains a remedies provision that this Court has previously found to be clear and definite in its intent and terms.[4]

---

[3] Although the issue was not raised in the briefing, the Court also has concerns as to whether it *could* sever the remedies provision and enforce the remainder of the contract. The severability provision only permits severance if the removal of the unenforceable provision "does not destroy the basis of the bargain among the parties as expressed" in the Agreement. Given that a main element of a contract is the remedy allowed for breach, the Court is not convinced that severance is an option it could endorse.

[4] The Development Parties Fourth Amended Complaint contains an assertion that they did not intend the effect of the language in the remedies provision to exclude them from additional contractual remedies in the event of breach. They argue in their briefs that "deposition testimony" would reveal that they interpreted the exclusive remedies provision to "limit their ability to enforce specific performance" and force the City to donate the Land. (Brief, ECF No., 98 at 5). Yet, the Agreement they signed does not say that and ¶22 of the Agreement further undercuts any argument that the Agreement does not represent the parties' negotiated Agreement. Further, even if this Court was so inclined to give teeth to the Development Parties' assertions, in determining the parties' intent, this court is bound by the unambiguous "language used to express their rights and duties." *McLinden v. Coco,* 765 N.E.2d 606, 611 (Ind. Ct. App. 2002). Only when a contract is ambiguous or uncertain can rules of contract construction and extrinsic evidence be considered. *Id.* Thus, absent a finding that somehow the Agreement is ambiguous, any intent of the parties outside the four corners of the Agreement itself is immaterial.

Absent some way of invalidating the remedies provision and severing it from the Agreement, an argument Development Parties have not been successful making in two rounds of briefing, the Development Parties remain bound by it. Since the remedies provision restricts the contract recovery to termination of the Agreement and nothing more, the Development Parties cannot recover on their claim for breach of contract. The Motion for Judgment on the Pleadings as to Count 1 of the Fourth Amended Complaint is GRANTED. The Development Parties breach of contract claim is DISMISSED without leave to amend.[5]

## CONCLUSION

Based on the above reasoning, the City's Motion for Judgment on the Pleadings is GRANTED as to Count 1 of the Fourth Amended Complaint. (ECF No. 90). Count 1 is DISMISSED without leave to amend.

SO ORDERED on September 23, 2024.

s/ *Holly A. Brady*  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT

---

[5] The Court has not been asked, nor should this Opinion and Order be read to find, that a "valid and enforceable" contract existed between the parties. The legal standard and current procedural posture of this case required the Court to assume the existence of a valid and enforceable agreement and conduct its analysis from there. The Court expresses no opinion, nor should it, on the validity or enforceability of the Agreement.